<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

_____

:
ROBERT P. WATSON,                                  :
:
        Plaintiff,                                 :
:                    Civil Action No. 07-2165 (JAG)
            v.                                      :
:                            **OPINION**
GRACE ROGERS, et al.,                              :
:
        Defendants.                                :
_____:

<u>**GREENAWAY, JR., U.S.D.J.**</u>

        This matter comes before this Court on the motion to dismiss by defendants Grace Rogers

("Rogers"), George Hayman ("Hayman"), Bernard Goodwin ("Goodwin"), Joseph D'Amico

("D'Amico"), William F. Plantier ("Plantier"), Captain Wright ("Wright"), and Dr. Ralph

Woodward ("Woodward," and, collectively with Rogers, Hayman, Goodwin, D'Amico, Plantier,

and Wright, the "Moving Defendants"), pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a

claim upon which relief can be granted, and, alternatively, for summary judgment, pursuant to

FED. R. CIV. P. 56.  For the reasons set forth below, Moving Defendants' motion to dismiss will

be granted, in part, and denied, in part.  This Court shall not consider Moving Defendants'

motion as one seeking summary judgment.

## I.  <u>BACKGROUND</u>

        <u>Pro se</u> plaintiff Robert Watson ("Plaintiff") has been a prisoner at the Adult Diagnostic &

Treatment Center ("ADTC") in Avenel, New Jersey, since July 14, 2006.  (Am. Compl. at 4.)

While incarcerated, Plaintiff alleges that Moving Defendants exposed him to elevated levels of secondhand smoke.  (Id.)  He also claims that he received inadequate medical treatment during his incarceration.  (Id. at 6-7.)

**A.**     **Secondhand Smoke Allegations**

According to Plaintiff, "[s]moking in dormitories and restroom areas within said living area has been prevalent," despite the presence of signs posted that prohibit smoking.  (Id.) Plaintiff is "restricted in movement in [his] living area, as a result of being involuntarily subjected to harmful toxins associated with second hand [sic] smoke."  (Id. at 5.)  The secondhand smoke "has left [Plaintiff] subjected to a biological ticking time bomb that has the potential to cause serious health problems in the future, such as serious respiratory deficiencies." (Id.)

On September 9, 2006, Plaintiff wrote an "Administrative Remedy (Case Number 06-09-0069) . . . concerning secondhand smoke in the dorms."  (Id.)  Although Plaintiff "was assured that the issue would be addressed, nothing changed."  (Id.)  Although "[t]he [New Jersey] Department of Corrections gave assurance that they would look into it[,] nothing materialized." (Id. at 6.)

Plaintiff "appealed the Administrative Remedy . . . on September 25, 2006," but to no avail.  (Id.)  On October 16, 2006, Plaintiff wrote to Michelle Warner Hammell, Director of the Office of External Affairs at the New Jersey Department of Corrections (the "NJDOC"), regarding the departmental policy on smoking.  (Id.)  Plaintiff did not receive a response.  (Id.)

Plaintiff claims that the measures taken by Moving Defendants "to eradicate this problem have been incoherent at best (and inconsistent at worst), such as recently removing matches from

2

[the] commissary on April 20, 2007, and installing electric lighters." (Id.) "The state has

opposed any suggestion that would require removing tobacco completely from [the]

commissary." (Id.)

**B.   Medical Treatment**

Plaintiff states that, from October 23, 2006 to March 15, 2007, he was treated for "a

pervasive skin infection [which] was based on approved treatment protocols designed to reduce

budgetary expenses." (Id. at 6.) "As a result, [Plaintiff] received cursory treatment that consisted

of a[n] assortment [of] creams . . . . Plaintiff[']s request for specialized treatment was refused."

(Id.) That is, "significant steps were not taken to address the skin infection above a cursory

glance." (Id.)

On November 1, 2006, Dr. John Hochberg ("Dr. Hochberg") examined all of the

individuals in the D-Dorm section of the Seven Left Unit, in which Plaintiff was housed. "Half

of the residences were already in the [i]nstitutional [i]nfirmary being treated for the same skin

infection." (Id.) On November 2, 2006, an epidemiologist toured the Seven Left Unit and

determined that the origin of the skin infection was scabies. (Id.)

"On November 3, 2006, Seven Left was the only unit quarantined for a period not to

exceed twenty[-]four hours, as a result of the skin infection." (Id.) Preventative measures were

taken in the other living units. (Id.) However, "[t]hese measures were taken in [a] disingenuous

posturing move to give a superficial appearance of addressing this issue." (Id.)

On December 26, 2006, the epidemiologist returned to examine Seven Left Unit, but

found that "[t]here had been no improvement . . . ." (Id. at 7.) The epidemiologist "determined

that it was now topic dermatitis." (Id.) However, less than a month later, Plaintiff "voiced [his]

concern that this may be early signs of Methicillin Resistant Staphylococcus Aureus (MRSA)." (Id.)

On February 22, 2007, after Plaintiff continued to complain of symptoms related to his skin infection, "all prisoners housed on Seven Left D-Dorm Area[] were instructed to remove all clothing because three cases of (MRSA) were confirmed in the back D-Dorm living area." (Id.) That same day, Rogers "addresse[d] Seven Left prisoners in [an] attempt to minimize the gravity of the situation." (Id. at 8.) Plaintiff's living area "has continued to experience most of the problems with the skin infections and later MRSA for well over a year." (Id.)

**C.** **The Amended Complaint**

Plaintiff claims that Moving Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments, as well as "1997(e)e, New Jersey's Clean Air Act N.J.S.A. 26.3D 55-63 [sic] and 28 U.S.C. § 1915(g)." (Id. at 2.) The following summarizes Plaintiff's allegations against each Moving Defendant:

1.   *George Hayman*

Hayman, "Commissioner [of] N.J. Dept. of Corrections, has acted with depraved indifference towards the security and health of . . . Plaintiff by not ordering the enforcement of New Jersey State Law which prohibits smoking inside [s]tate[-]owned building[s] and facilities[,] i.e., A.D.T.C.[,] and is further negligent by continuing to allow the sell [sic] of tobacco products . . . ." (Id. at 3.) Plaintiff also alleges that "Hayman's actions are in direct violation of the settlement entered into between the [t]obacco industry and the State of New Jersey, whereby both parties acknowledged the health risks associated with individuals breathing in second hand [sic] smoke from tobacco products." (Id.)

4

2.      *William F. Plantier*

Plantier, the Director of Operations for the NJDOC, is "charged with ensuring the integrity of all [s]tate [s]tatutes, including [N.J. STAT. ANN. §] 26:3D-46: prohibiting smoking, along with all internal management procedures pertaining to the use of tobacco products at facilities" that he supervises.  (Id. at 9.)  Plantier has ignored "the substantial health hazard that tobacco poses to the inmate population . . . [by] hiding behind policies that are never enforced at the facility . . . ."  (Id. at 9-10.)

3.      *Grace Rogers*

Rogers is alleged to "allow[] smoking by both Department of Correction personnel and inmate to continue inside a state building in violation of state law . . . ."  (Id. at 10.)  As a result of this conduct, Plaintiff contends that he "contract[ed] reactionary respiratory ailment due to second hand [sic] smoke . . . ."  (Id.)

4.      *Captain Wright*

Wright, who is the Acting Chief of Security at ADTC, "has an obligation and duty to ensure that the laws, rules and regulations which pertain to the operation of D.O.C. facilities are enforced and carried out . . . ."  (Id.)  Nevertheless, Plaintiff alleges, "Capt. Wright has acted with depraved indifference in the functions of duties, in that he is not ensuring that the no[-]smoking law is being followed in the buildings at A.D.T.C."  (Id.)

5.      *Joseph D'Amico*

D'Amico, the manager of the Commissary, "continues to order and sell tobacco products at A.D.T.C., which he dose [sic] with knowledge of the documented health risk that tobacco products pose to the public."  (Id.)  These sales are performed "while making a profit at the

health expense and risk being placed upon the Plaintiff."  (<u>Id.</u>)

6.     *Bernard Goodwin*

Goodwin "is responsible for policies and decisions regarding state inmates."  (<u>Id.</u> at 13.)
Plaintiff's allegations against Goodwin presumably pertain to the alleged outbreak of a skin
infection in the unit in which he is housed; Plaintiff asserts that Goodwin must have known of
"the seriousness of the situation here at ADTC," given the "number of outbreaks" at ADTC.
(<u>Id.</u>)  Goodwin "is also responsible for protecting me from exposure to contagious contaminates,
[and] he repeatedly and publicly denied the scope in the number of inmates affected by the
condition."  (<u>Id.</u>)

7.     *Dr. Ralph Woodard*

According to Plaintiff, "Dr. Woodard restricted treatment options in an attempt to control
expenses, by advising [Correctional Medical Services] physicians to decrease the amount of
treatment given."  (<u>Id.</u> at 14.)

## II.  <u>STANDARD OF REVIEW</u>

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the
claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of
what the claim is and the grounds upon which it rests.'"  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.
Ct. 1955, 1959 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), while abrogating the
decision in other respects).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss
does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his
'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a
cause of action's elements will not do."  <u>Twombly</u>, 127 S. Ct. at 1959.  "Factual allegations must

be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id.

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).  That is, a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S. Ct. at 1960 (abrogating Conley, 355 U.S. 41). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).  While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  See W. Penn Power

Co., 147 F.3d at 259; 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357.  Any

further expansion beyond the pleading, however, may require conversion of the motion into one

for summary judgment.  FED. R. CIV. P. 12(b).

The court's review of the sufficiency of a pro se complaint, "however inartfully pleaded,"

is less stringent than its review of pleadings prepared by lawyers.  Haines v. Kerner, 404 U.S.

519, 520 (1972).  A court must assume a pro se plaintiff's factual allegations are true and

construe his claim liberally.  See Nietzke v. Williams, 490 U.S. 319, 330 n.9 (1999); Roman v.

Jeffes, 904 F.2d 192, 197 (3d Cir. 1990).

## III.  ANALYSIS

After liberally construing the Amended Complaint, this Court finds that Plaintiff has

raised a Section 1983 claim for violation of his First, Fifth, Eighth, and Fourteenth Amendment

rights.  Plaintiff also alleges violations of the New Jersey Smoke Free Act (the "NJSFA") by

Moving Defendants.[1]  Moving Defendants' arguments supporting dismissal of the

aforementioned claims shall be analyzed seriatim.[2]

_____

[1] Plaintiff alleges a cause of action under the "New Jersey Clean Air Act N.J.S.A. 26.3D 55-63 [sic]."  (Am. Compl. 2.)  However, New Jersey has no statute entitled the New Jersey Clean Air Act.  Since the citation provided in the Amended Complaint is that of the New Jersey Smoke Free Act, this Court shall construe the Amended Complaint to allege a violation of the New Jersey Smoke Free Act.

[2] As discovery has not yet been conducted, Moving Defendants' motion for summary judgment is premature.  See Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir. 2007).  The Third Circuit has stated that

> [i]t is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'  This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record.  In this vein, the Supreme Court has explained that '[a]ny potential problem with . . . premature [summary judgment] motions can be adequately dealt

A.   <u>**Exhaustion of Administrative Remedies**</u>

Moving Defendants allege that Plaintiff's claims regarding medical treatment are procedurally barred for failing to exhaust available administrative remedies properly, as provided in the Prison Litigation Reform Act (the "PLRA").

The PLRA, codified at 42 U.S.C. § 1997e, was enacted "to address the large number of prisoner complaints filed in federal court." <u>Jones v. Bock</u>, 127 S. Ct. 910, 914 (2007). Under the PLRA, prisoners must "exhaust prison grievance procedures before filing suit." <u>Id.</u> (citing 28 U.S.C. § 1915A; 42 U.S.C. § 1997e). In particular, the relevant PLRA provision states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a).

Failure to exhaust administrative remedies is an affirmative defense, and as such, it must be pleaded and proven by the defendant. <u>Bock</u>, 127 S. Ct. at 921; <u>see also</u> <u>Jones v. Morris County Corr. Facility</u>, No. 06-2461, 2007 WL 1118342, at *2 (D.N.J. Apr. 13, 2007) (noting that defendants invoking a failure to exhaust defense "bear the burden of production and persuasion"). Accordingly, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." <u>Bock</u>, 127 S. Ct. at 914.

When an exhaustion defense is raised, "a 12(b)(6) standard is inappropriate" and the "motion to dismiss should be converted to a motion for summary judgment." <u>Clarke v.</u>

---

with under *Rule 56(f)*.'"

<u>Id.</u> (emphasis in original) (internal citations omitted). Based on the Circuit's rationale, this Court will not address Moving Defendants' arguments for summary judgment, except where those arguments alternatively support a valid argument for dismissal under Rule 12(b)(6).

MacFarland, No. 06-3125, 2007 WL 2128176, at *2 (D.N.J. July 25, 2007); Hemingway v.

Falor, 200 F. App'x. 86, 90-91 (3d Cir. 2006).  This conversion is generally required because a

district court is going "beyond [plaintiff's] Complaint to consider 'evidence the defendant has

presented in support of its assertions.'" Camp v. Brennan, 219 F.3d 279, 280 (3d Cir. 2000) (e.g.,

a declaration from a prison official).  Moreover, in cases involving PLRA exhaustion, the Third

Circuit has explicitly stated that "[r]eliance on declarations from prison officials requires

conversion [to summary judgment]."  Hemingway, 200 F. App'x. at 90.

   Moving Defendants argue that Plaintiff failed to follow the institutional grievance

procedure established by ADTC.  In support of this argument, Moving Defendants rely on the

Declaration of Melissa Matthews, who is an employee of the NJDOC.  Such reliance on

documents outside of the pleading is inapposite when resolving a motion to dismiss.  Since

Defendants' motion for summary judgment is premature, and this Court is loath to convert the

motion to dismiss into one for summary judgment, this Court shall not address the validity of this

affirmative defense.

**B.**    **Plaintiff's § 1983 Claims Against Moving Defendants in Their Official Capacities
Are Barred by the Eleventh Amendment**

   The Eleventh Amendment provides that "[t]he Judicial power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S. CONST. amend. XI.  This Amendment bars suits against any state, or its agencies, in federal

court by that state's own citizens or citizens of other states.  Edelman v. Jordan, 415 U.S. 651,

662-63 (1974); see also Kelley v. Edison Twp., No. 03-4817, 2006 U.S. Dist. LEXIS 23510, at

*18 (D.N.J. Apr. 25, 2006) (citing Bennett v. City of Atl. City, 288 F. Supp. 2d 675, 679 (D.N.J. 2003) (stating that "[t]he breadth of state sovereign immunity protects not only states, but expands to protect entities and persons who can show that, even though the State is not the named defendant, the state is the real, substantial party in interest.").

The Supreme Court has held that a Section 1983 claim seeking damages against a state official in his official capacity must be dismissed because the real party at interest is the state and the state is not a "person" within the meaning of Section 1983. Will v. Mich. Dept. of State Police, 491 U.S. 58, 70-71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under 1983."). Claims against state officers, acting in their official capacity, are treated as suits against the state itself. See Kentucky v. Graham, 473 U.S. 159, 166 (1986); Brandon v. Holt, 469 U.S. 464, 471-72 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents."); Monell v. Dep't of Soc. Svcs., 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). State agencies and officials acting in their official capacities are routinely afforded Eleventh Amendment immunity. Buckhannon Bd. & Care Home, Inc., v. W. Va. Dept. of Health & Human Res., 532 U.S. 598, 609 (2001); Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 658 (3d Cir. 1989).

According to N.J. STAT. ANN. § 30:1B-2, the NJDOC is a principal department of the state's executive branch. Courts have consistently extended sovereign immunity to NJDOC officials in Section 1983 actions. See, e.g., Casilla v. N.J. State Prison, No. 05-4590, 2006 WL 2534416, at *7 (D.N.J. Aug. 31, 2006) (finding Section 1983 claims against defendant in official

11

capacity barred by the Eleventh Amendment).

This Court finds that Moving Defendants are entitled to sovereign immunity, as they are all named in the Amended Complaint in their official capacities as employees of the NJDOC. Moving Defendants are entitled to Eleventh Amendment immunity, and Plaintiff's Section 1983 claims against them, in their official capacities, must be dismissed.[3]

**C.**   **Plaintiff's Section 1983 Claims Against Moving Defendants Does Not Rely On the Respondeat Superior Theory**

Moving Defendants also argue that summary judgment should be granted in their favor for Plaintiff's Section 1983 claims because the claims rely on the theory of respondeat superior, and Moving Defendants did not have any personal involvement in the alleged wrongs. As explained *supra* in footnote 2 of this Opinion, Moving Defendants' motion for summary judgment is premature. This Court, therefore, shall consider only whether dismissal of Plaintiff's claim is appropriate under Moving Defendants' proffered argument.

Local government units and supervisors are not liable under Section 1983 solely on a theory of respondeat superior. See Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Dept. of Soc. Svcs., 436 U.S. 658, 690-91, 694 (1978); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellaciprete, 845 F. 2d 1195, 1207 (3d

_____

[3] Since "[t]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983," however, Moving Defendants are not granted immunity with respect to the Section 1983 claims against Moving Defendants in their individual capacities. See Hafer v. Melo, 502 U.S. 21, 31 (1991).

Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or

actual knowledge and acquiescence."  Id.; see also Baker v. Monroe Twp., 50 F.3d 1186, 1190-

91 (3d Cir. 1995).

Moving Defendants argue that the Section 1983 claims should be dismissed because

Plaintiff has not alleged any personal involvement by any of the parties.  However, the Amended

Complaint alleges personal involvement, whether through direct action or acquiescence, by each

of the Moving Defendants.  Specifically, Plaintiff alleges that Moving Defendants had

knowledge of ongoing constitutional violations, and the power to remedy these violations.

Plaintiff's Section 1983 claims raised against Moving Defendants, in their individual capacities,

shall not be dismissed.

**D.      Plaintiff Has Alleged Sufficient Facts to Support an Eighth Amendment Claim of
         ETS Exposure**

Moving Defendants next argue that Plaintiff's Eighth Amendment claim should be

dismissed because Plaintiff cannot produce any evidence that he was exposed to unreasonably

high levels of environmental tobacco smoke ("ETS"), or that Moving Defendants acted with

deliberate indifference to his health or safety.  This Court finds that the Amended Complaint

alleges facts sufficient to support Plaintiff's Eighth Amendment claim.

The Supreme Court has held that prison officials violate the Eighth Amendment's

prohibition against cruel and unusual punishment by exposing inmates to an excessive level of

ETS.  Helling v. McKinney, 509 U.S. 25, 35 (1993) ("We cannot rule at this juncture that it will

be impossible for [plaintiff], on remand, to prove an Eighth Amendment violation based on

exposure to ETS.").  A claim for violation of the Eighth Amendment may be based upon possible

future harm to health, as well as present harm, arising from ETS exposure.  Id. at 33.

To obtain relief, a prisoner must satisfy a two-prong test.  The objective prong requires Plaintiff to show that the level of ETS to which he is exposed is unreasonably high, while the subjective prong requires Plaintiff to show that the prison officials have expressed "deliberate indifference" to the health risks associated with secondhand smoke.  Id. at 35-37.

1.    Objective Prong

To determine whether a Plaintiff is being exposed to unreasonably high levels of ETS requires

> more than a scientific and statistical inquiry into the seriousness of the potential harm and likelihood that such injury to health will actually be caused by exposure to ETS.  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwilling to such a risk.

Id. at 36 (emphasis in original).  "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate."  Id.

Moving Defendants argue that Plaintiff cannot satisfy the objective prong of Helling because there is no evidence to show that he was being exposed to unreasonably high levels of ETS.  Further, they argue that there is a No-Smoking Policy at ADTC that is regularly enforced, and that inmates are issued disciplinary charges for smoking in prohibited locations.

Plaintiff presents allegations that may support a finding that he was exposed to unreasonably high levels of ETS.  Plaintiff states in the Amended Complaint that he was "subjected to a substantial health hazard[,] specifically, elevated levels of second hand [sic] smoke."  (Am. Compl. at 4.)  Plaintiff alleges exposure to secondhand smoke in dormitory

restrooms, on ramp walkways, and in dormitories.  (Id. at 4-5.)

Since consideration of Moving Defendants' summary judgment motion is not appropriate at this time, Plaintiff is not required at this stage of the litigation to present evidence that would entitle him to prevail.  Taking Plaintiff's allegations to be true, as is required at this juncture, this Court cannot conclude that Plaintiff is unable to satisfy the objective prong of the Helling test.

2.    Subjective Prong

Plaintiff has also alleged facts sufficient to satisfy the subjective prong of Helling.  "To prove deliberate indifference under the subjective component, an inmate must show that the defendant official knows that the inmate faces a substantial risk of serious harm, and disregards that risk by failing to take reasonable measures to abate it."  Edwards v. Samuels, No. 06-3758, 2007 WL 81884, at *7 (D.N.J. Jan 8, 2007) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  The deliberate indifference factor "should be determined in light of the prison authorities' current attitudes and conduct."  Helling, 509 U.S. at 36.  Although "the adoption of a smoking policy . . . will bear heavily on the inquiry into deliberate indifference," id. at 36, allegations of ignored requests for a non-smoking unit, together with knowledge of a prisoner's medical condition, may satisfy the subjective prong of the Helling test.  See Edwards, 2007 WL 81884, at *7; Patel v. Warren, No. A-07-CA-760-SS, 2007 WL 2818056, at *7 (W.D. Tex. Sept. 26, 2007).

Moving Defendants contend that Plaintiff cannot satisfy the subjective prong of Helling because ADTC is a smoke-free institution, the staff enforces the provisions of the policy, and all of Plaintiff's grievances were promptly addressed and resolved.  This Court disagrees.

While the implementation of a no-smoking policy can indicate a lack of deliberate

indifference, the existence of a policy is not dispositive.  See Edwards, 2007 WL 81884, at *7 (holding that Plaintiff's allegations that a prison's nonsmoking policy was not enforced and his repeated requests for a non-smoking unit were ignored could support a claim of deliberate indifference such that dismissal was not appropriate); Patel, 2007 WL 2818056, at *7 (holding that dismissal was inappropriate where plaintiff claimed defendants ignored non-smoking policy and refused Plaintiff's requests for non-smoking housing).

Here, Plaintiff alleges that, despite a no-smoking policy, he was exposed to excessive levels of ETS.  He asserts that Moving Defendants have neither ceased the sale of tobacco products nor enforced the no-smoking policy.  This Court finds that Plaintiff has alleged facts sufficient to survive a motion to dismiss.

**E.**      **Plaintiff States Valid Eighth Amendment Claim Against Woodard for Inadequate Medical Treatment**

Moving Defendants argue that Woodard is entitled to an entry of summary judgment in his favor because Plaintiff was provided access to medical care at ADTC, and his disagreement over the form of treatment he received does not rise to the level of medical deliberate indifference.  Since this Court shall not entertain Moving Defendants' summary judgment motion, this Court shall only analyze whether Plaintiff has expressed a viable Eighth Amendment claim against Woodard.

"The Eighth Amendment prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'"  Rouse v. Plantier, 182 F. 3d 192, 198 (3d Cir. 1999) (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)).  "The Amendment embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . .

16

. .'"  Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F. 2d 571, 579 (8th Cir. 1968)).

In Estelle, the Supreme Court held that a failure to provide adequate medical treatment to prisoners may constitute a violation of the Eighth Amendment.  Id. at 104.  To state a cognizable Eighth Amendment claim under Estelle, a prisoner must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle standard, the objective component, the prisoner must show that his medical needs are serious.  Estelle, 429 U.S. at 104.  A medical need is serious if  "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Plaintiff has shown that his medical needs were serious by describing in detail the gravity and longevity of his skin infection.  Plaintiff returned to the infirmary a number of times because he "continued to itch," and saw the skin infection progress from "bumps" to "boils all over [his] body."  (Am. Compl. at 7.)

To satisfy the second prong, the subjective component, an inmate must show that the state actors acted with deliberate indifference to his serious medical need.  Estelle, 429 U.S. at 105. "Deliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'"  Natale, 318 F.3d at 582 (quoting Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000)).  A prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs," and may not rest on allegations of

17

negligence or malpractice.  Estelle, 429 U.S. at 106.  The Third Circuit has found "'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Plaintiff asserts in the Amended Complaint that Woodard prevented him from receiving needed treatment by restricting Plaintiff's treatment options due to cost considerations. Woodard's alleged failure to provide necessary treatment, in an attempt to save money, satisfies the second prong of the test, and therefore allows Plaintiff's Eighth Amendment claim against Woodard to survive dismissal.

**F.    Plaintiff Has Alleged Facts Sufficient to Support a Fourteenth Amendment Claim, But Not a Fifth Amendment Claim**

Moving Defendants assert that Plaintiff's Section 1983 claims relying on the Fifth and the Fourteenth Amendments must fail because he has not alleged facts to support an equal protection claim.

Plaintiff cannot, as a matter of law, sustain a Section 1983 claim against Moving Defendants alleging violation of his Fifth Amendment rights.  The Fifth Amendment restricts only federal government action.  Nguyen v. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983). Since the Amended Complaint does not allege claims against any federal actors, Plaintiff's Section 1983 claim for violation of the Fifth Amendment must be dismissed.

The analysis of Plaintiff's Fourteenth Amendment claim, however, is less

straightforward.  The Fourteenth Amendment of the Constitution provides that a State shall not

"deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. CONST.

amend. XIV.  Due process rights are divided into two areas: substantive due process, and

procedural due process.

Substantive due process mandates that "a property interest that falls within the ambit of

substantive due process may not be taken away by the state for reasons that are arbitrary,

irrational, or tainted by improper motive, or by means of government conduct so egregious that it

shocks the conscience[.]"  Nicholas v. Pa. State Univ., 227 F.3d 133, 139 (3d Cir. 2000) (internal

citations and quotations omitted).  "To prevail on a non-legislative substantive due process claim,

a plaintiff must establish as a threshold matter that he has a protected property interest to which

the Fourteenth Amendment's due process protection applies."  Id. at 139-40.

Procedural due process, on the other hand, requires notice and a hearing to be given to

any person that is deprived of a life, liberty, or property interest.  Cleveland Bd. of Educ. v.

Loudermill, 470 U.S. 532, 542 (1985).

The Fourteenth Amendment also ensures that a person is not denied "equal protection of

the laws**."** U.S. CONST. amend. XIV.  The equal protection clause "does not require the state to

treat all persons alike."  Price v. Cohen, 715 F.2d 87, 91 (3d Cir. 1983).  "To establish a violation

of the equal protection clause, a plaintiff must show that the allegedly offensive categorization

invidiously discriminates against the disfavored group."  Id.

Moving Defendants correctly point out that Plaintiff failed to allege membership in a

class or category of individuals experiencing discrimination at the hands of Moving Defendants.

Prisoners, generally speaking, do not inherently constitute a suspect classification, and state

regulations of prisoners are deemed "presumptively constitutional." Myrie v. Comm'r, N.J. Dept. of Corr., 267 F.3d 251, 263 (3d Cir. 2001).[4]  The Amended Complaint focuses solely on the constitutional violations allegedly experienced by Plaintiff, and does not allege, expressly or impliedly, that the grievances occurred or endured due to Plaintiff's membership with a particular class of persons.

While Plaintiff has not alleged facts sufficient to assert an equal protection violation, Plaintiff nevertheless may have presented facts supporting violation of his Fourteenth Amendment rights.  Moving Defendants have offered no arguments explaining that Plaintiff failed to allege a violation of a fundamental right, such that he was not entitled to procedural due process.  Moving Defendants also have not asserted in their motion papers that Plaintiff failed to allege a violation of his substantive due process rights.  Since "defendant bears the burden of showing no claim has been stated," Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Gould Elec. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000)), Plaintiff's Section 1983 claim for violation of the Fourteenth Amendment shall not be dismissed.

**G.**     **Dismissal of Plaintiff's Claim for Punitive Damages is Not Appropriate**

Punitive damages are available in a Section 1983 action where the "defendant's conduct is shown to have been motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983); see also Bennis v. Gable, 823 F.2d 723, 734 (3d Cir. 1987).  "Punitive damages are awarded in

_____

[4]  This Court acknowledges that a plaintiff may identify a "particular inmate sub-group" sufficient to challenge a prison policy on equal protection grounds. Id. at 263-64.  Even with a liberal construal of the Amended Complaint, however, this Court has not been able to identify any such allegation raised by Plaintiff.

the jury's discretion to punish [the defendant] for his outrageous conduct and to deter him and others from similar conduct in the future." <u>Smith</u>, 461 U.S. at 54.

Moving Defendants argue that Plaintiff has not alleged that they acted with an evil motive or callous indifference towards his rights, and that Plaintiff's various grievances were addressed by ADTC personnel.  However, Plaintiff alleges that his concerns regarding secondhand smoke exposure and his skin infection were not addressed, despite his repeated complaints and worsening ailments.  Plaintiff's allegations are sufficient to survive a motion to dismiss his request for punitive damages.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, the motion to dismiss shall be granted, in part, and denied, in part.  The Section 1983 claims raised against Moving Defendants in their official capacities shall be dismissed.  In addition, Plaintiff's Section 1983 claim based on violation of the Fifth Amendment shall be dismissed.  Plaintiff's remaining claims shall survive.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.


Date: June 26, 2008