NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBERT P. WATSON, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. 07-2165 (JAG) |
| v. : | |
| : | **OPINION** |
| GRACE ROGERS, et al., : | |
| : | |
| Defendants. : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion to dismiss the Second Amended Complaint by defendants Correctional Medical Services ("CMS") and Dr. John Hochberg (collectively, the "Moving Defendants")[1], pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted.  For the reasons set forth below, Moving Defendants' motion to dismiss shall be granted.

## I. BACKGROUND

Pro se plaintiff Robert Watson ("Plaintiff") is a prisoner at the Adult Diagnostic and Treatment Center ("ADTC") in Avenel, New Jersey.  (Second Am. Compl. at 3.)  CMS, is based

---

[1] On May 27, 2008, this Court entered an Opinion and Order dismissing Plaintiff's Amended Complaint as to defendants Phillip Morris, John Middleton, Inc., Lorillard Tobacco Company, R.J. Reynolds Tobacco Company, Brown and Williamson Holdings, Inc., Lane Limited, and M. Bernstein & Sons, pursuant to FED. R. CIV. P. 12(b)(6).  On June 27, 2008, this Court entered an Opinion and Order dismissing Plaintiff's Amended Complaint as to defendants Grace Rogers, George Hayman, Bernard Goodwin, Joseph D'Amico, William F. Plantier, Captain Wright, and Dr. Ralph Woodward, pursuant to FED. R. CIV. P. 12(b)(6).

in Ewing New Jersey, and provides medical services to prisoners at the ADTC. (Id. at 13.) Dr. John Hochberg is the resident physician at the ADTC. (Id.)

Plaintiff states that he has been subjected to inadequate medical treatment by CMS. (Id. at 6.) Plaintiff alleges that from October 23, 2006 to March 15, 2007, his treatment for a pervasive skin infection was based on approved treatment protocols designed to reduce budgetary expenses. (Id.) Plaintiff claims that he received cursory treatment, which consisted of an assortment of antifungal and antibiotic creams rather than the specialized treatment he requested. (Id.) Plaintiff states that his treatment was "micromanaged by Dr. Ralph Woodward, New Jersey Department of Corrections" and as a result no significant steps were taken to address the skin infection above a cursory glance. (Id.)

Plaintiff asserts that his treatment by Defendant Dr. John Hochberg began on October 23, 2006. (Id.) Dr. Hochberg examined him and prescribed an antifungal cream. (Id.) On November 1, 2006, Dr. Hochberg visited the Seven Left Unit, where he examined all individuals housed in the D-Dorm section in which Plaintiff resides. (Id.) Plaintiff alleges that, at this time, half of the residents of this section were already in the Institutional Infirmary being treated for the same skin infection from which he suffers. (Id.)

Plaintiff further avers that he was given Benadryl to treat his itching. (Id.) Plaintiff states that on November 2, 2006, an epidemiologist employed by either CMS or the State of New Jersey toured Seven Left. This individual felt that the origin of the skin infection was scabies. (Id.) Plaintiff alleges that on November 3, 2006, the Seven Left Unit was the only unit quarantined for a period not to exceed twenty four hours, as a result of the skin infection, and preventative measures were taken in other units. (Id.) Plaintiff states that these measures

amounted to "disingenuous posturing" in order to provide a superficial appearance of addressing this issue. (Id.)

Plaintiff alleges that on December 7, 2006 wihle having a chronic care consultation with Dr. Hochberg, he mentioned that he continued to itch and bumps were developing on his penis and scrotum. (Id. at 7.) Plaintiff states that "once again" Dr. Hochberg prescribed thirty days of Benadryl and clobetasol propionate. (Id.) On December 8, 2006, Dr. Hochberg is alleged to have prescribed prednisone which is known to have adverse effects in connection with Plaintiff's chronic care condition. (Id.) Plaintiff was also issued Bacitracin Zinc ointment. (Id.)

On December 26, 2006, the same epidemiologist returned to Seven Left. (Id.) Plaintiff maintains that there had been no improvement in his skin condition. (Id.) The epidemiologist determined that the cause of the skin condition was topical dermatitis. (Id.) On January 3, 2007, Plaintiff alleges that his symptoms manifested into boils all over his body. (Id.) Plaintiff said he was prescribed ten days of Bactrim. (Id.) Plaintiff states that he voiced his concern that the skin condition may be early signs of Methicillin Resistant Staphylococcus Aureus (MSRA). Plaintiff states that on January 26, 2007, the itching and boils had gotten worse and he had to wait until the next week to receive more ointment. (Id.) On January 29, 2007, Plaintiff alleges that Dr. Hochberg saw him, and that he (Plaintiff) informed him that none of the creams was working. (Id.) Dr. Hochberg's response was to prescribe one of the other creams again. (Id.) In addition, Dr. Hochberg consulted the list of treatment protocols. (Id.)

On January 31, 2007, Plaintiff received two boxes of clotrimazole antifungal cream-- these "different inapt treatment protocols had been ongoing for five months." (Id.) On February 2, 2007, Dr. Hochberg notified Plaintiff that he would required to be observed applying the

3

antifungal cream. (Id.) On February 8, 2007, Dr. Hochberg allegedly informed Plaintiff that his chronic care diagnosis was inaccurate. (Id.)

On February 22, 2007 all prisoners housed in the Seven Left D-Dorm Area were instructed to remove all clothing because three cases of MSRA were confirmed in the back D-Dorm living area. (Id.) Plaintiff states that the area of D-Dorm where he resides has had the greatest problems with skin infections and later, MSRA, for well over a year. (Id.) Plaintiff states that later that same day Administrator Rogers addressed the Seven Left prisoners in an attempt to minimize the gravity of the situation. (Id. at 8.) Plaintiff alleges that she assured the prisoners that the outbreak was not a result of an internal policy in which Dr. Hochberg continued to admit individuals to the infirmary and discharge them before all their symptoms had been addressed. (Id.)

On February 25, 2007, Plaintiff sent correspondence to Administrator Rogers in reference to the presence of MSRA on Seven Left. (Id.) On March 8, 2007, Plaintiff continued to seek treatment for his skin infection and he received more creams. (Id.) On March 16, 2007, Dr. H. Smyczek examined Plainitiff and discovered numerous bumps on his penis and observed the continued itching. (Id.) Also, Dr. Smyczek again prescribed Clobetasol Propionate Ointment Usp, 0.05%. (Id.)

Plaintiff alleges that the Department of Corrections has used the Avenel facility as a surrogate diagnostic evaluation center for incoming prisoners with sexually based offenses exclusively. (Id.) Plaintiff states that the facility never has put safeguards in place to ensure that parasites would not be introduced into the facility from individuals entering directly from county jails. (Id.) Plaintiff states that Avenel has ignored obligations placed upon it by the Department

4

of Corrections to provide an environment that is free of contaminated agents that would result in Plaintiff's condition. (Id.)

Plaintiff also states that CMS is responsible for the actions of their employees which are following company policies and procedures. (Id. at 13). Plaintiff alleges that CMS and its employees are ethically responsible for failing to inform patients about potentially life threatening conditions, which is a fundamental breach of standard medical practice. (Id.) Plaintiff states that he has a right to know what condition he suffers from and the logic behind the treatments he receives. (Id.) Plaintiff states that CMS employees did not afford him that right. (Id.)

Plaintiff states that Dr. Hochberg had an obligation to treat him to the best of his ability without the influence of the facility administration. (Id.) Instead Dr. Hochberg facilitated "a campaign of misleading prisoners" by minimizing the seriousness of his condition. (Id.) Dr. Hochberg breached standard medical practice because he failed to inform Plaintiff about his potentially life threatening condition. (Id.) Finally, Dr. Hochberg compromised Plaintiff's health in an attempt to "placate a budgetary limitation." (Id.)

Plaintiff asserts that this Court has jurisdiction over his claims, pursuant to 42 U.S.C. § 1983, and pursuant to the "First Amendment, Eighth Amendment, Fifth Amendment, Fourteenth Amendment, 1997(e)e, violation of New Jersey's Clean Air Act N.J.S.A. 26.3D 55-63, [sic] [and] 28 U.S.C. § 1915(g)." (Id. at 1-2.)

In his prayer for relief, Plaintiff requests that

> "The Court award monetary damages in the amount of 200,000 as a result of Correctional Medical Services neglect to adequately treat this preventable condition."

(Id. at 9.)

5

## II. STANDARD OF REVIEW

A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his allegations that will entitle him to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007); see also In re Warfarin, 214 F.3d at 397 (stating that a complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 127 S. Ct. at 1964 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (internal citations omitted); see also FED. R. CIV. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965 (internal citations omitted). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to

6

permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Civil 2d § 1357 at 340) (2d ed. 1990).

A court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994); see also Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

The court's review of the sufficiency of a *pro se* complaint, "however inartfully pleaded," is less stringent than its review of pleadings prepared by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). A court must assume a *pro se* plaintiff's factual allegations are true and construe his

claim liberally.  See Nietzke v. Williams, 490 U.S. 319, 330 n.9; Roman v. Jeffes, 904 F.2d 192, 197 (3d Cir. 1990).

### III.  ANALYSIS

After liberally construing the Second Amended Complaint, this Court finds that Plaintiff has raised a Section 1983 claim against Moving Defendants for allegedly violating Plaintiff's Eighth Amendment rights.  See Natale v. Camden County Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) ("As a threshold matter, we note that the District Court accepted the Natales' § 1983 claim for inadequate medical care as one arising under the Eighth Amendment right of a convicted prisoner to receive adequate medical care, articulated by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 103-04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (finding that a failure to provide adequate medical care constitutes cruel and unusual punishment)").

**A.  Plaintiff's § 1983 Claim Fails Because Plaintiff Fails to Plead Facts to Support A Claim of Medical Indifference Against CMS and Dr. Hochberg**

"Regardless of how evidenced, deliberate indifference to a prisoner's injury or illness states a cause of action under s[ection] 1983."  Estelle v. Gamble**,** 429 U.S. 97, 105 (1976).  In Estelle, the Supreme Court of the United States established a standard for determining when the actions of prison officials and medical staff amount to "deliberate indifference" to a prisoner's medical needs in violation of the Eighth Amendment.  The Court explained, "We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care."  Id. at 104-105

(citations omitted). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105.

In the instant case, Plaintiff has failed to demonstrate that CMS or Dr. Hochberg were deliberately indifferent to his medical needs. Supreme Court precedent requires such a showing in order to state a cognizable claim for a violation of the Eighth Amendment. (Id.) On the contrary, the facts contained in Plaintiff's Second Amended Complaint suggest that CMS and Dr. Hochberg were quite attentive to Plaintiff's medical needs. Plaintiff alleges that he received treatment on numerous occasions for his skin condition. (Second Amend. Compl. at 6-7.) Plaintiff's Second Amended Complaint asserts mere dissatisfaction with the medical treatment he has received: "I have been subjected to inadequate treatment by Correctional Medical Services." (Id. at 6.)

Plaintiff stated that his treatment started on October 23, 2006, when he was seen by Correctional Medical Services physician, Dr. John Hochberg, who prescribed an antifungal cream. (Id.) Plaintiff further states that on November 1, 2006, only one week after Dr. Hochberg examined him, that Dr. Hochberg returned to examine "all the individuals housed in the D-Dorm section." (Id.) Plaintiff stated, "I am housed in this particular living area." (Id.) Plaintiff was prescribed Benadryl at this time to treat his itching (Id.) According to Plaintiff, two days later, on November 3, 2006, Plaintiff's entire unit was quarantined for a period not to exceed 24 hours, as a result of the skin infection." (Id.) Plaintiff also states that an epidemiologist "employed either by "CMS" or the State" toured the Seven Left Unit, where Plaintiff resides, and determined that the cause of his skin infection was scabies. (Id. at 6.)

According to Plaintiff, on December 7, 2006, Dr. Hochberg again examined Plaintiff, who complained again that his skin infection was causing itching, and stated that bumps had formed on

9

his penis.  (Id.)  Plaintiff alleges that Dr. Hochberg prescribed thirty days of Benadryl and clobetasol propionate in response to his complaint.  (Id. at 7.)  The very next day Dr. Hochberg prescribed Prednisone to treat Plaintiff's skin condition and Plaintiff was also issued Bacitracin Zinc Ointment.  (Id.)  On December 26, 2006, the epidemiologist again visited Plaintiff's unit to determine the cause of the skin infection. (Id. at 7.)   Plaintiff was prescribed 10 days of Bactrim on January 3, 2007. (Id.)  Plaintiff was examined again on January 29, 2007 by Dr. Hochberg, who prescribed additional medication for Plaintiff's condition after he complained that his itching and boils on his skin had worsened. (Id.) Plaintiff also received additional antifungal cream and ointment on January 31, 2007.  (Id.)

The facts Plaintiff has pled in his Second Amended Complaint in support of his claim that prison officials and Dr. Hochberg were indifferent to his medical needs undermine Plaintiff's very claim.  The facts of the Second Amended Complaint demonstrate that CMS, and Dr. Hochberg took many steps to diagnose, treat, and determine the cause of Plaintiff's skin condition.  According to Plaintiff, he was examined several times by Dr. Hochberg after first complaining about his skin condition, he received numerous medications to treat his condition and CMS provided inspections of Plaintiff's living area, including requiring some residents to be quarantined in order to prevent the spread of the skin infection that afflicted Plaintiff.  (Id. at 6-7.)

The Supreme Court of the United States has indicated that its view that deliberate indifference to a prisoner's medical needs would give rise to a claim under § 1983 for violation of the Eighth Amendment "does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105.  The Court stated that mere failure to treat a condition adequately is insufficient to

support a claim for "deliberate indifference." As the Court explained, "Similarly, in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Id. at 105-106. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Id.

Plaintiff has failed to allege acts or omissions on the part of CMS or Dr. Hochberg that would give rise to a cognizable claim under the Eighth Amendment. Allegations that Defendants failed to cure his condition or that Dr. Hochberg prescribed medicines that were "known to have adverse affects," in connection with Plaintiff's chronic care condition do not give rise to a claim for deliberate medical indifference. Although such claims may more properly sound in medical malpractice, the Third Circuit has denied similar § 1983 claims of prisoners predicated on alleged violations of the Eighth Amendment due to deliberate medical indifference. See Johnson v. Watson, slip op., 2008 WL 5237261, at *1 (3d Cir. 2008) ("Allegations of medical malpractice are not sufficient to establish a constitutional violation. *Id.* Furthermore, "mere disagreement as to the proper medical treatment" does not support a claim of an Eighth Amendment violation").

11

## IV. CONCLUSION

For the reasons stated above, Moving Defendants' motion to dismiss the Second Amended Complaint, pursuant to FED. R. CIV. P. 12(b)(6), shall be granted.

        S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: March 20, 2009